**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| CHRISTOPHER BRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-cv-1246 (KBJ) |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**
**DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT**
**AND REQUIRING SUPPLEMENTAL SUBMISSIONS**

The question presently before this Court is whether the two declarations that the

Federal Bureau of Investigation ("FBI") has submitted in support of its motion for

summary judgment are sufficiently detailed to permit the Court to conduct a meaningful

review of the FBI's invocation of Exemptions 3, 6, 7(C), and 7(E) to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, under the circumstances presented in this

case. The government has invoked these exemptions with respect to information that it

has redacted from 12 pages of records that are responsive to the FOIA request that

plaintiff Christopher Brick submitted to the FBI (*see* Def.'s Mot. for Summ. J., ECF

No. 12; Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 14; Decl. of David M. Hardy

("Hardy Decl."), ECF No. 12-1; Second Decl. of David M. Hardy ("2d Hardy Decl."),

ECF No. 18-2), and on at least three prior occasions, this Court has addressed this exact

issue in connection with FBI declarations in FOIA matters, *see Poitras v. Dep't of

Homeland Sec.*, No. 15cv1091, slip op. at 3–6 (D.D.C. March 31, 2017); *Elec. Privacy

Info. Ctr. v. DOJ*, No. 13cv1961, 2016 WL 447426, at *3–4 (D.D.C. Feb. 4, 2016);

*Sciacca v. FBI*, 23 F. Supp. 3d 17, 30–31 (D.D.C. 2014). The answer here is no different than it was in those cases: now, as then, the Court's response to the question of whether the submitted declarations are sufficient is a resounding, "No."

Although the record in this case contains redacted copies of the 12 pages at issue, and also includes notations as to which exemption is being claimed for each redaction, the proferred declarations do not provide a sufficient justification for these withholdings, because the declarations provide no details about, or context for, the FBI's redaction determinations. *See Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1184 (D.C. Cir. 1996) (concluding that affidavits that "offer no functional description of the documents" and that "contain only sweeping and conclusory assertions that the agency withheld the documents because they contained material which could reasonably be expected to cause damage to national security" were inadequate). For example, regarding the FBI's invocation of Exemption 3, one of the declarations merely states that "the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to plaintiff[,]" and that the redacted information "pertains to intelligence activities source and methods and has been the subject of declassification in accordance with existent regulations." (Hardy Decl. ¶ 21.) The law is settled, however, that a declaration that does "little more than parrot established legal standards" when explaining withholdings falls well short of meeting the government's obligations under the FOIA. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 236 (D.D.C. 2013) (finding that an agency fails to meet its burden under the FOIA if the agency's declarations and briefs are "laden with generalized, categorical descriptions of the contents").

The FBI's support for its claim that the records at issue were compiled for law enforcement purposes, and are thus within the ambit of Exemptions 7(C) and 7(E), is similarly scant, consisting almost entirely of the conclusory contention that "the information collected was integrated into national security/criminal investigation of third party individuals." (Hardy Decl. ¶ 22.) Reliance on this unadorned statement to establish a law enforcement purpose for these records flouts more than 35 years of precedent that establishes that such bare contentions are simply not enough. *See Pratt v. Webster*, 673 F.2d 408, 414 (D.C. Cir. 1982) ("The simplest response to the Government's contention that FBI records per se meet the threshold criterion of Exemption 7 is that that argument has been rejected by this Circuit in *Abramson v. FBI*, 658 F.2d 806 (D.C. Cir. 1980)[.]"); *see also Quinon v. FBI*, 86 F.3d 1222, 1228–30 (D.C. Cir. 1996) (holding that when an agency seeks to withhold records under Exemption 7 on the grounds that the records were compiled for law enforcement purposes, the agency must make a threshold showing that the predicate law enforcement investigation had a rational basis).

Nor do the declarations establish that the FBI has satisfied its indisputable obligation to use reasonable efforts to determine whether the individuals mentioned in four of the disputed records are deceased, for the purpose of evaluating personal privacy interests in the context of Exemptions 6 and 7(C). *See Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (explaining that, when an agency invokes Exemption 7(C), "the proper inquiry is whether the Government has made reasonable use of the information readily available to it, and whether there exist reasonable alternative methods [of discovering an individual's death status] that the Government failed to

employ"). The FBI's declarant generally avers that the agency approached its obligation to ascertain the death status of the individuals mentioned in the records at issue in two ways: (1) it undertook a failed effort to ascertain the birthdates of the individuals on the face of the responsive documents in order to apply the "100-year" rule (under which the FBI will presume that an individual who was born more than 100 years before the production date is dead), and (2) it utilized unspecified "institutional knowledge" to evaluate the individuals' death status in an unexplained way. (2d Hardy Decl. ¶ 13.) However, Given the nature of the records here and the state of modern technology, it is not at all clear why the FBI thinks that even a successful application of the 100-year rule—standing alone—would constitute a reasonable effort to determine the death status of the individuals in question. *See Davis v. DOJ*, 460 F.3d 92, 95 (D.C. Cir. 2006) ("The Bureau does not appear to have [even] *contemplated* other ways of determining" if the individuals mentioned in these four pages of records are dead or alive, "such as Googling them." (emphasis added)). And the declarant's cryptic statement that, in addition to attempting to apply the 100-year rule, the FBI used "institutional knowledge gained from prior FOIA requests or internal records" to evaluate the individual's death status (2d Hardy Decl. ¶ 13) is also of no help, because, frankly, this Court "ha[s] no idea what that means." *Davis*, 460 F.3d at 99; *see also Schrecker v. DOJ*, 254 F.3d 162, 167 (D.C. Cir. 2001) (remanding for an explanation of the agency's general averment that it had relied upon "other readily available information" to determine the death status of individuals for the purpose of Exemption 7(C), because "[w]ithout confirmation that the Government took certain basic steps to ascertain whether an individual was dead or alive, we are unable to say whether the

4

Government reasonably balanced the interests in personal privacy against the public interest in release of the information at issue").

Thus, this Court wholeheartedly agrees with Brick's assertion that the FBI's declarations in this case are "so sweeping and vague that [they] could apply to almost any exemption 3, 6, 7(C), or 7(E) case[.]" (Pl.'s Mot. at 10.) Moreover, this is not the first time that this Court has brought the persistent vagueness of the FBI's declarations in FOIA cases to the agency's attention, *see Poitras*, slip op. at 3–6; *Elec. Privacy Info. Ctr.*, 2016 WL 447426, at \*3–4; *Sciacca*, 23 F. Supp. 3d at 30–31, and this deficiency is particularly worrisome in a case such as this one, where *a mere 12 pages* of records are in dispute. In the future, this Court expects the FBI to be vigilant in its submission of supporting materials, and to provide the Court with documents that will enable review of the agency's FOIA withholdings "in the first instance[,] rather than waiting to be prompted to do so by Court Order." *Schoenman v. FBI*, 576 F. Supp. 2d 3, 10 (D.D.C. 2008). Today, however, this Court will provide the FBI with one additional opportunity to justify its withholdings fully; the agency must do so through submission of a supplemental declaration that addresses the concerns the Court has expressed in this Opinion and any others that the agency might identify as it undertakes to comply with the instant Order. The Court will also require the FBI to submit unredacted copies of the 12 disputed pages for *in camera* review.

Make no mistake: if the FBI fails to furnish a supplemental declaration that contains sufficient detail for the Court to ascertain the particular bases for the government's withholdings, this Court will rely solely upon the insufficient materials that have thus far been submitted, and as a result, it will grant Plaintiff's cross motion

for summary judgment and require production of unredacted copies of these 12 pages of records. *See Sciacca*, 23 F. Supp.3d at 30 (noting that, "because of the information asymmetries inherent in the FOIA system, the agency bears the burden of justifying any withholding of otherwise responsive information").

*    *    *

Accordingly, it is hereby

**ORDERED** that Defendant's [12] Motion for Summary Judgment and Plaintiff's [14] Cross Motion for Summary Judgment are **DENIED** without prejudice for the reasons stated above. It is

**FURTHER ORDERED** that the parties shall meet and confer, and on or before **December 8, 2017**, the parties shall file a joint proposed schedule that proposes due dates for the following filings: (1) a supplemental declaration with respect to the FBI's withholdings under FOIA Exemptions 3, 6, 7(C), and 7(E) that is sufficient to permit the Court to evaluate the particular reasons for the FBI's invocation of each FOIA exemption, and (2) renewed cross-motions for summary judgment. To the extent the government maintains that provision of this information will force it to disclose the information it is authorized to protect, it may file both a public and an *ex parte* version of the supplemental declaration. In light of this Order requiring new summary judgment briefs and materials, it is

**FURTHER ORDERED** that Defendant shall submit for *in camera* review unredacted copies of all 12 pages at issue in this case. Defendant may opt to submit these materials at any time, but these materials must be provided to the Court no later

than the date on which Defendant's renewed cross motion for summary judgment and

supporting materials are filed.


DATE:  November 9, 2017              *Ketanji Brown Jackson*
                                    KETANJI BROWN JACKSON
                                    United States District Judge