# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                              |   |                     |
|------------------------------|---|---------------------|
| CHRISTOPHER BRICK,           | ) |                     |
|              Plaintiff,      | ) |                     |
|         v.                   | ) | No. 15-cv-1246 (KBJ)|
| DEPARTMENT OF JUSTICE,       | ) |                     |
|              Defendant.      | ) |                     |

## MEMORANDUM OPINION

During her lifetime, Eleanor Roosevelt served the United States in a variety of roles, including as First Lady of the United States, as a United Nations delegate, and as a representative to the United Nations Commission on Human Rights. (*See* Compl., ECF No. 1, ¶ 5.) She also caught the attention—and provoked the ire—of J. Edgar Hoover, the former director of the Federal Bureau of Investigation ("FBI"). (*See id.*)[1] At Hoover's direction, the FBI collected extensive information regarding Mrs. Roosevelt during the later years of her life (*see id.* ¶¶ 5–6); in 2015, more than five decades after her death, plaintiff Christopher Brick submitted a request to the FBI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of certain records from the FBI's Eleanor Roosevelt file (*see id.* ¶ 7). The FBI released hundreds of pages of documents in response to Brick's FOIA request, but the agency redacted some of the responsive documents on the grounds that the information was exempted from disclosure under the FOIA. (*See id.* ¶ 8.) At issue in the instant lawsuit is a

---

[1] The FBI is a component of the Department of Justice ("DOJ" or "Defendant"), the named defendant in this matter. (*See* Compl. ¶ 4.)

subset of 12 pages of records that the FBI produced to Brick, with respect to which the agency invoked FOIA Exemptions 3 and 7(E), among other provisions, to withhold certain information. In his complaint, Brick maintains that the FBI has "no legal basis for refusing to disclose these twelve pages in full." (*Id*. ¶ 11.)

Before this Court at present are the parties' cross-motions for summary judgment. (*See* Def.'s Renewed Mot. for Summ. J. ("Def.'s Renewed Mot."), ECF No. 26; Pl.'s Renewed Cross-Mot. for Summ. J. ("Pl.'s Renewed Mot."), ECF No. 28.) The parties' arguments specifically pertain to the redactions in 12 pages of records "that appear to provide information on Mrs. Roosevelt's travel to the Soviet Union and participation in events and activities where she was likely to encounter Soviet United Nations personnel[.]" (Pl.'s Renewed Mot. at 3.)[2] DOJ argues that Exemptions 3 and 7(E) authorize the FBI to withhold the information at issue, and also that the agency has adequately justified those withholdings in the *ex parte*, classified declaration the agency submitted with its motion. (*See* Def.'s Renewed Mot. at 8–11.) Brick insists that DOJ's public filings provide no justification for the FBI's assertion of Exemption 3 or 7(E), and asserts that the FOIA requires DOJ to articulate publicly an explanation "that is adequate to support the claimed exemptions without revealing the information that the exemptions are designed to protect." (*See* Pl.'s Renewed Mot. at 4.)

As discussed fully below, the Court has reviewed the relevant documents *in camera*, and it finds that DOJ has established in its *ex parte* filing that the FBI properly invoked Exemptions 3 and 7(E) to redact the information at issue in this case. This Court further finds that, under the circumstances of this case, it was appropriate for the

---

[2] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

2

government to explain the bases for its withholdings in a classified, *ex parte* declaration. As such, DOJ's renewed motion for summary judgment must be **GRANTED** and Brick's renewed cross-motion must be **DENIED**. A separate Order consistent with this Memorandum Opinion will follow.

I.   **BACKGROUND**[3]

   A.   **Factual Background**

Christopher Brick is the Project Director and Editor for the Eleanor Roosevelt Papers Project ("Project"), which describes itself as "a research center that aims to make the vast record of Eleanor Roosevelt's written, spoken, and audio-visual legacy accessible to scholars, students, teachers, and the general public." (Decl. of Christopher Brick, ECF No. 14-1, ¶ 2.) The Project accomplishes this mission by publishing Eleanor Roosevelt's papers, among other things, and it has published two volumes of her records to date. (*See id.*; *see also* Compl. ¶ 3.)

As noted above, at the behest of its former director J. Edgar Hoover, the FBI maintained an extensive individual file on former First Lady Eleanor Roosevelt. (*See* Compl. ¶ 5.) In 1982, the FBI released to the public many, but not all, of the records from this file. (*See* Compl. ¶ 6; *see also* Ans., ECF No. 9, ¶ 6.) Brick submitted a FOIA request to DOJ on June 25, 2015, seeking certain records from the FBI's file that had not been included in the 1982 release. (*See* Pl.'s Stmt. of Material Facts as to Which There Is No Genuine Dispute, ECF No. 28 at 12–13, ¶ 1.) In response to Brick's request, the FBI released 338 pages of redacted records, and invoked FOIA Exemptions 6, 7(C), 7(D), and 7(E) to justify the withholdings. (*See id.* ¶ 2.) Brick appealed the

---

[3] The background facts are undisputed unless otherwise noted.

redactions on 12 of these pages (*see id.* ¶ 3), and on February 9, 2015, DOJ's Office of Information Policy affirmed the FBI's withholdings on the grounds that the agency had properly redacted information pursuant to Exemptions 6, 7(C), and 7(E) (*see id.* ¶ 4).

### B. Procedural History

On August 3, 2015, Brick filed a four-page complaint in this Court, "to challenge the decision of the Department of Justice ('DOJ') to redact certain records in Eleanor Roosevelt's Federal Bureau of Investigation ('FBI') file[.]" (Compl. ¶ 1.) At issue in Brick's complaint are "the withheld portions of . . . twelve pages" that, according to Brick, "defendants have no legal basis for refusing to disclose[.]" (*Id.* ¶ 11.)

On November 17, 2015, DOJ filed a motion for summary judgment that argued that the redactions in those 12 pages were proper under Exemptions 6, 7(C), and 7(E). (*See* Def.'s Mot. For Summ. J, ECF No. 12.) DOJ also filed a supporting declaration from FBI declarant David M. Hardy. (*See* Decl. of David M. Hardy, ECF No. 12-1.) Brick filed a cross-motion for summary judgment (*see* Pl.'s Cross-Mot. for Summ. J., ECF No. 14), and in response, DOJ filed an additional declaration from Hardy further explaining its withholdings (*see* Second Decl. of David M. Hardy, ECF No. 18-2).[4]

On November 9, 2017, this Court found that Hardy's declarations were not "sufficiently detailed to permit the Court to conduct a meaningful review" of the FBI's assertion of the FOIA exemptions, and thus, denied both cross-motions without prejudice. *Brick v. Dep't of Justice*, 293 F. Supp. 3d 9, 10, 13 (D.D.C. 2017). DOJ filed a renewed motion for summary judgment, along with an unclassified declaration from Hardy, on February 1, 2018. (*See* Def.'s Renewed Mot.; Fourth Decl. of David.

---

[4] Defendant subsequently submitted a third declaration from Hardy that it asserts corrected a clerical error in his second declaration. (*See* Third Decl. of David M. Hardy, ECF No. 21.)

M. Hardy, ECF No. 26-1.) DOJ also lodged with the Classified Information Security Officer a classified declaration from Hardy, as well as unredacted copies of the 12 pages at issue in the instant case. (*See* Notice of Lodging Classified Decl. & Unredacted Documents with the Classified Info. Sec. Officer, ECF No. 27; Classified Hardy Decl.)

In its papers, DOJ explains that the FBI has reprocessed the 12 pages of records, and it subsequently released additional information to Brick after dropping its reliance on Exemptions 6 and 7(C). (*See* Def.'s Stmt. of Undisputed Material Facts, ECF No. 26 at 2-3, ¶ 7.) DOJ asserts that the FBI is entitled to summary judgment with respect to the remaining redactions, because the agency properly invoked FOIA Exemption 3—which permits an agency to withhold records that are "specifically exempted from disclosure by [a] statute [that] . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld[,]" 5 U.S.C. § 552(b)(3)—and FOIA Exemption 7(E)—which permits an agency to withhold certain records "compiled for law enforcement purposes[,]" 5 U.S.C. § 552(b)(7)(E). (*See* Def.'s Renewed Mot. at 9–11.) In particular, DOJ maintains that the FBI properly redacted information regarding United States intelligence sources and methods that is exempt from disclosure under Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1) (*see id.* at 8), as well as information that was "compiled for law enforcement purposes" (*id.* at 9) and that, if disclosed, would reveal "FBI investigative techniques and procedures" and "risk circumvention of the law" (*id.* at 10-11). Finally, DOJ argues that it has released all non-exempt, reasonably segregable portions of records that are responsive to Brick's FOIA request. (*See id.* at 11-12.)

5

For his part, Brick has filed a renewed cross-motion for summary judgment, in which he maintains that DOJ's "public filings offer no support for its claimed exemptions [and therefore] they cannot carry [Defendant's] burden of establishing that the records fall within the exemptions[.]" (Pl.'s Renewed Mot. at 6.) Brick further contends that it is improper for the FBI to justify its invocation of Exemptions 3 and 7(E) only in sealed, *ex parte* filings; instead, according to Brick, the agency should have provided in its public papers a general description of the law enforcement and intelligence techniques at issue. (*See id.* at 7–11; *see also id.* at 7 (asserting that "the government's bald assertion that it cannot provide any meaningful public explanation of its withholdings is entirely unsupported and would, if accepted, frustrate the ability of FOIA litigation to provide a check on unjustified and unlawful withholding of records").)

The parties' cross-motions for summary judgment are now ripe for this Court's review. (*See* Reply in Supp. of Def.'s Renewed Mot. & Opp'n to Pl.'s Renewed Mot., ECF No. 31; Reply in Supp. of Pl.'s Renewed Mot. ("Pl.'s Renewed Reply"), ECF No. 33.)

## II. LEGAL STANDARDS

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (internal citation and quotation marks omitted). Summary judgment is available when the pleadings, record, and any *in camera* documents "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[B]ecause the FOIA favors disclosure, the

6

defending agency bears the burden of demonstrating in its motion for summary judgment that it has 'fully discharged its obligations.'" *Hall & Assocs. LLC v. U.S. Envtl. Prot. Agency*, 315 F. Supp. 3d 519, 531 (D.D.C. 2018) (quoting *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (alteration omitted)). In deciding whether the agency has carried this burden, the district court will conduct a *de novo* review the agency's evidence and arguments, *see Stein v. DOJ*, 134 F. Supp. 3d 457, 468 (D.D.C. 2015), and will interpret the facts "in the light most favorable to the FOIA requester[,]" *Willis v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008).

Where an agency asserts that it is entitled to withhold information under a FOIA exemption, it "bears the burden of proving the applicability of [the] claimed exemptions." *Am. Civil Liberties Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "To carry this burden, the agency must submit sufficiently detailed affidavits or declarations, a Vaughn index of the withheld documents, or both, in order to, among other things, enable the court to fulfill its duty of ruling on the applicability of the exemption." *Judicial Watch, Inc. v. CIA*, 310 F. Supp. 3d 34, 41 (D.D.C. 2018) (internal quotation marks, citation, and alteration omitted). The affidavits that an agency submits are entitled to a presumption of good faith, and the court can award the agency summary judgment based solely on the information provided therein. *See Hedrick v. FBI*, 216 F. Supp. 3d 84, 94–95 (D.D.C. 2016). However, to be sufficient to support an award of summary judgment, the affidavits must describe "the justifications for nondisclosure with reasonably specific detail, [and] demonstrate that the information withheld logically falls within the claimed exemption," and must not be

7

"controverted by either contrary evidence in the record [] or by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

Significantly for present purposes, an agency is authorized to submit its affidavits *ex parte*, for the Court's *in camera* review under certain circumstances, and while "the use of *in camera* affidavits has generally been disfavored," *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 110 (D.D.C. 2017) (internal quotation marks and citation omitted), it is appropriate for an agency to support its withholdings in this manner when there is a reasonable risk "that public itemization and detailed justification would compromise legitimate secrecy interests[.]" *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1385 (D.C. Cir. 1979); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 31 (D.D.C. 1998) (acknowledging that in certain "special circumstances" involving intelligence activities, "even minimal detail itself [can] constitute sensitive information"). "[W]hen a district court uses an *in camera* affidavit, it must both make its reasons for doing so clear and make as much as possible of the *in camera* submission available to the opposing party." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996) (italics added); *see also Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 16 (D.D.C. 2009) (explaining that "where, as here, an agency indicates that no additional information concerning an investigation may be publicly disclosed without revealing precisely the information that the agency seeks to withhold, the receipt of *in camera* declarations is appropriate").

The FOIA also requires the government to produce all reasonably segregable information that remains after exempt information has been withheld. *See Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). "The

8

government bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents[,]" and "must provide a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Barouch v. DOJ*, 962 F. Supp. 2d 30, 56 (D.D.C. 2013) (internal quotation marks, citation, and alteration omitted). The government can meet this burden through the submission of "affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).

## III.   ANALYSIS

At issue in this litigation are redactions that the FBI has made to 12 pages of docments concerning Eleanor Roosevelt, which the agency maintains are justified under FOIA Exemptions 3 and 7(E), as well as the agency's explanations for asserting these exemptions. (*See* Def.'s Renewed Mot. at 7–11.) Notably, the explanations for the agency's withholdings are contained in a classified declaration that the FBI has submitted to the Court *ex parte*; from Brick's perspective, because the *public* declarations are insufficient to support the claimed exemptions, the agency has simply "refus[ed] to provide support for its exemption claims." (Pl.'s Renewed Mot. at 4; *see also id.* ("The government's public filings offer not even the most general account of how the records would reveal intelligence sources and methods, provide no inkling of the basis for the assertion that the records were compiled for law enforcement purposes, and offer no explanation of how they would reveal investigative techniques and methods and create a risk of circumvention of the law.").) As explained below, this Court finds that the government's reliance on an *ex parte,* classified declaration to

justify its withholdings is permissible under the circumstances of this case; moreover, upon consideration of that declaration and all of the parties' filings in this case, the Court concludes that the material that the FBI has withheld falls within the protective scope of Exemptions 3 and 7(E), such that the agency is entitled to summary judgment.

### A. Under The Circumstances Presented In This Case, Reliance On An *Ex Parte* Declaration Is Appropriate

Like every plaintiff in a FOIA case that involves a classified declaration, Brick is "at a distinct disadvantage with respect to [his] argument that the withheld information should be released." *EPIC*, 296 F. Supp. 3d at 119. (*See also* Pl.'s Renewed Mot. at 5 (noting that the government "relies entirely on its sealed submission to justify its claims of exemption").) This is because, when the government provides its justification for withholding requested information in an *in camera* declaration, the decision to tender the reasons *ex parte* admittedly "'deprives the FOIA requester of an opportunity to present his interpretation of the withheld documents[,]'" *Jarvik v. CIA*, 741 F. Supp. 2d 106, 111 (D.D.C. 2010) (quoting *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996)), and, indeed, such a practice runs counter to the general presumption in favor of full and open judicial proceedings, *see EEOC v. Nat'l Children's Ctr. Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). This perceived unfairness is the focus of much of Brick's argument in the instant case. (*See, e.g.*, Pl.'s Renewed Mot. at 4 (lamenting that "[t]he government's failure to justify [publicly] its exemptions makes a mockery of FOIA, the adversary process, and this Court's order that it present [its] justifications"); *see also id.* at 6 (insisting that "it is obviously not possible . . . to demonstrate the legal or factual inadequacy of the agency's arguments: The agency has made none").)

Nevertheless, the D.C. Circuit has long recognized that an agency can support its withholdings through classified declarations submitted to the Court for *in camera* review when "extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed." *Lykins v. DOJ*, 725 F.2d 1455, 1463 (D.C. Cir. 1984); *see also Hayden*, 608 F.2d at 1385; *Edmonds v. FBI*, 272 F. Supp. 2d 35, 46–47 (D.D.C. 2003). Having reviewed the classified declaration and the unredacted materials at issue in the instant case, this Court concludes that such is the case here. In particular, the Court rejects Brick's vigorous contention that the FBI could have done more to explain itself on the public record—*i.e.*, that its public declaration could have provided *some* information "describing the intelligence sources and methods or law enforcement techniques the records here would supposedly reveal," or *some* statement "substantiating that the records relate to foreign intelligence or were compiled for law enforcement," or *some* explanation of "how their disclosure would lead to circumvention of the law" (Pl.'s Renewed Reply at 5)—"without disclosing the information the government claims is protected" (*id.*).

In this regard, Brick insists that "it is possible at least for [the FBI] to 'describe the general nature of the technique while withholding the full details'" (*id.* (quoting *Boyd v. Bur. of Alcohol, Tobacco, Firearms & Explosives*, 2006 WL 2844912, at *9 (D.D.C. 2006))); for example, he surmises from "the face of the redacted records" that the documents are "memoranda that appear to report statements about Mrs. Roosevelt's activities made by informants[,]" and he argues that this "method of using confidential informants and writing down what those informants say" is a "widely known method [that] does not qualify for protection" as a confidential intelligence method. (*Id.* at 6;

*see also* Pl.'s Renewed Mot. at 10 (asserting that "the government's utilization of that method is already revealed by the very existence of the memoranda, regardless of the redactions" (internal quotation marks omitted)); Pl.'s Renewed Reply at 6–7 (arguing that Defendant has "effectively conced[ed]" the nature of the method at issue).) Brick further maintains that "[n]othing the government has yet said publicly in the course of this litigation provides any basis for concluding that the documents provide any 'detailed . . . description of . . . Hoover-era methods,' let alone that disclosing them would reveal unknown intelligence or law enforcement methods, or risk damage to national security or circumvention of the laws." (Pl.'s Renewed Mot. at 10 (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 31 (D.C. Cir. 1998) (alterations in original)).)

This Court is not at liberty to confirm or refute Brick's assumptions and assertions about what the agency is able to reveal, because the instant Opinion cannot specifically reference the information set forth in the agency's declaration, which is classified. But the Court will say that it has given full consideration to Brick's contentions about the government's ability to provide more details regarding the general nature of the methods and techniques at issue and the underlying law enforcement purposes, as well as Brick's deductions about the nature of the redacted information, and the Court finds based on its *in camera* review of the classified declaration and the unredacted records that the government's concerns about potentially harmful disclosure are justified. In other words, this Court agrees with the agency that this case presents a circumstance in which there is a risk of revelation of information that "compromise[s] legitimate secrecy interests[,]" *Hayden*, 608 F.2d at 1385, such

12

that resort to an *in camera* declaration is necessary. And it likewise agrees that the government's public declaration provides as fulsome of a statement as is possible without revealing the very information that the government seeks to protect. *See, e.g.*, *Lykins*, 725 F.2d at 1463–65; *see also Shapiro*, 239 F. Supp. 3d at 111; *Edmonds*, 272 F. Supp. 2d at 46–47.

### B. The FBI Properly Invoked Exemption 3 To Withhold Information In The 12 Pages At Issue

Turning to the merits of the FBI's withholding determination, for the reasons explained below, this Court further concludes that the government has properly relied on FOIA Exemption 3, and alternatively, FOIA Exemption 7(E), to withhold the redacted information.

FOIA's Exemption 3 permits an agency to withhold information that is responsive to a FOIA request when that information is "specifically exempted from disclosure by [another] statute," provided that the applicable statute "(i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In analyzing whether an agency can rely upon a particular statute for an Exemption 3 withholding, a reviewing court "must first determine whether the statute is a withholding statute at all by deciding whether it satisfies the threshold requirement that it specifically exempt matters from disclosure[,]" *EPIC*, 296 F. Supp. 3d at 120 (emphasis, internal quotation marks, alterations, and citation omitted); this determination is made by "look[ing] to the language of the statute on its face[,]" *Gov't Accountability Project v. FDA*, 206 F. Supp. 3d 420, 429 (D.D.C. 2016) (internal quotation marks and citation omitted). After

conducting this initial analysis, the court must then determine (1) whether the statute satisfies either of Exemption 3's disjunctive conditions for withholding the responsive information, *see Gov't Accountability Project*, 206 F. Supp. 3d at 428, and if so (2) whether the material the agency has withheld falls within the scope of the statute, *see Fitzgibbon v. CIA*, 911 F.2d 755, 761–62 (D.C. Cir. 1990).

Here, the FBI relied upon Section 102A(i)(1) of the National Security Act of 1947, which requires the Director of National Intelligence to "protect from unauthorized disclosure intelligence sources and methods." 50 U.S.C. § 3024(i)(1). (*See* Def.'s Renewed Mot. at 8.) "The DNI has delegated enforcement of this National Security Act mandate to the heads of the 17 agencies that constitute the Intelligence Community," and the FBI is one of those delegees. *EPIC*, 296 F. Supp. 3d at 121 (internal quotation marks, citation, and alterations omitted). Thus, it is clear quite well-accepted that Section 102A(i)(1) of the National Security Act of 1947 is a withholding statute for purposes of Exemption 3, because it "specifically exempt[s]" matters from disclosure, and it is further established that the statute satisfies one of Exemption 3's disjunctive conditions, because it "refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see also CIA v. Sims*, 471 U.S. 159, 167 (1985) (explaining that the "conclusion [that the National Security Act is a withholding statute] is supported by the plain meaning of the statute, by the legislative history of FOIA, and by every federal court of appeals that has considered the matter"); *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015) (noting that the plaintiff in that case "does not dispute, nor could she, that Section 3024(i)(1) is a valid Exemption 3 statute").

With respect to whether or not the withheld material at issue in the instant case falls within the substantive ambit of the National Security Act, this Court readily finds that the withheld material pertains to "intelligence sources and methods" that the FBI must protect from disclosure. 50 U.S.C. § 3024(i)(1). This finding is based upon the Court's review of Hardy's public and *in camera* declarations, as well as the documents themselves, for the reasons explained in the declarations. (*See, e.g.*, 2d Hardy Decl. ¶ 7 (explaining that the "withheld information named specific intelligence sources, including a permanent source symbol number, as well as intelligence collected by the source"); Classified Hardy Decl. (providing details regarding the nature of the intelligence sources and methods at issue).) Moreover, in his *ex parte* declaration, Hardy has provided a logical explanation of how certain intelligence sources and methods would be revealed if additional information in the 12 pages at issue is released. (*See* Classified Hardy Decl.) This is all that Exemption 3 requires. *See Fitzgibbon*, 911 F.2d at 761–62 (explaining that "the sole issue for decision [with respect to Exemption 3] is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage" (internal quotation marks and citation omitted)).

### C. The FBI Properly Invoked Exemption 7(E) To Withhold Information In The 12 Pages At Issue

FOIA's Exemption 7(E) enables agencies to withhold records or information that are "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), where production of the records or information "would disclose *techniques* and *procedures* for law enforcement investigations or prosecutions, or would disclose *guidelines* for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," *id.* § 552(b)(7)(E) (emphasis added).

Records or information can be deemed to have been "compiled for law enforcement purposes," *id.* § 552(b)(7), "even when the materials have not been compiled in the course of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002). Indeed, "[l]aw enforcement entails more than just investigating and prosecuting individuals *after* a violation of the law[,]" *Pub. Emps. For Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (emphasis in original); it can also include "'proactive steps designed to prevent criminal activity and to maintain security.'" *Id*. (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring)).

The second element of Exemption 7(E)—that records or information would disclose "techniques" and "procedures" for law enforcement investigations or prosecutions—is satisfied in circumstances where the material at issue "would disclose details about a law enforcement technique or procedure itself[.]" *Sheridan v. U.S. Office of Pers. Mgmt.*, 278 F. Supp. 3d 11, 19 (D.D.C. 2017) (citation omitted). And the final element of Exemption 7(E)—that disclosure of records or information "could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E)— "sets a relatively low bar for the agency to justify withholding[.]" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). "In fact, 'the exemption looks not just for [actual] circumvention of the law, but for a *risk* of circumvention; not just for an actual or certain risk of circumvention, but for an *expected* risk; not just for an undeniably or universally expected risk, but for a *reasonably* expected risk; and not just for certitude of a reasonably expected risk, but for the *chance* of a reasonably expected risk.'" *Sheridan*, 278 F. Supp. 3d at 19 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190,

16

1193 (D.C. Cir. 2009) (alteration in original) (emphasis added)). As such, "[r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law." *Mayer Brown*, 562 F.3d at 1194 (third and fourth alterations in original) (internal quotation marks and citation omitted).

Here, Hardy's classified declaration, in conjunction the unredacted records themselves, establishes that the records at issue were "compiled for law enforcement purposes" as the D.C. Circuit has interpreted that phrase. *See Pub. Emps. For Envtl. Responsibility*, 740 F.3d at 203. In particular, the information at issue was compiled as part of an FBI national security investigation (*see* Hardy Decl., ECF No. 12-1, ¶ 22 (explaining that the records "were compiled in furtherance of the FBI's national security investigation into potential targets, and in accordance with the FBI's authority to collect intelligence to protect the United States from terrorism and threats to National Security"); *see also* Classified Hardy Decl.). Furthermore, it is apparent from these same documents that releasing any additional information would in fact disclose law enforcement techniques and procedures. *See Sheridan*, 278 F. Supp. 3d at 18–19. (*See also* Classified Hardy Decl.) Based on its consideration of all of the materials submitted for *in camera* review, this Court further finds that the FBI has established a logical connection between release of the redacted information and risk of circumvention of the law. *See Mayer Brown*, 562 F.3d at 1194. (*See also, generally*, Classified Hardy Decl.)

17

### D. The FBI Has Established That It Has Released All Reasonably Segregable, Non-Exempt Information

Finally, this Court finds that the government has satisfied its obligation "of demonstrating that no reasonably segregable material exists" beyond what it has already released. *Barouch*, 962 F. Supp. 2d at 56. Stated simply, the Court's *in camera* review of the unredacted records reveals that the redactions at issue here are indeed narrowly tailored, and the Court agrees with the government that it is not possible for any additional information to be released from the records at issue without disclosing the very information that the government seeks to protect. *See EPIC*, 296 F. Supp. 3d at 118–19.

## IV. CONCLUSION

For the reasons discussed above, and after careful consideration of all of the materials submitted in this matter, including Hardy's classified affidavit and unredacted copies of the 12 pages of records at issue in this case, the Court concludes that the FBI's submission of an *ex parte* declaration providing its explanation for the redactions was appropriate, and that the agency's invocation of Exemptions 3 and 7(E) to withhold the information at issue in this lawsuit was proper. Accordingly, and as set forth in the accompanying Order, Brick's motion for summary judgment is **DENIED** and DOJ's motion for summary judgment is **GRANTED**.

Date: February 19, 2019

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge